

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

FILED
SEP 02 2021

| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>vs.<br><br>TIFFANY BERNARD,<br><br>         Defendant. | 1:20-CR-10041-02-CBK<br><br><br><br>ORDER |
|---|---|

    Defendant Tiffany Bernard and her three co-defendants were charged in the superseding indictment, Doc. 35, with:

    Count 1.    Assault with intent to commit murder and aiding and abetting in violation of 18 U.S.C. § 113(a)(1).

                   The crime has a 20 year maximum prison sentence.

    Count 2.    Maiming and aiding and abetting in violation of 18 U.S.C. § 114.

                   The crime has a 20 year maximum prison sentence.

    Count 3.    Robbery and aiding and abetting in violation of 18 U.S.C. § 2111.

                   The Crime has a 15 year maximum prison sentence.

    Count 4.    Assault with a dangerous weapon and aiding and abetting in violation of 18 U.S.C. § 113(a)(3).

                   The crime has a 10 year maximum prison sentence.

    Count 5.    Assault resulting in serious bodily injury and aiding and abetting in violation of 18 U.S.C. § 113(a)(6).

                   The crime has a 10 year maximum prison sentence.

    All four defendants entered into plea agreements wherein they agreed to plead guilty to robbery and aiding and abetting. The government agreed to dismiss the remaining counts. The government agreed to recommend that the defendants receive a three-level reduction for acceptance of responsibility and to recommend a sentence within the guidelines range (except as to Pumpkinseed, the first defendant to enter a plea

agreement – the government agreed to recommend a sentence at the low end of the range). The defendants agreed to waive any right to appeal any non-jurisdictional issues but retained the right to appeal a decision by the Court to depart upward as well as to appeal the sentence for its substantive reasonableness if an upward departure or variance is imposed. The defendants agreed to pay restitution and agreed that restitution would not be limited to the offense of conviction.

The defendants entered guilty pleas. The Court accepted the guilty pleas but reserved ruling on whether to accept the plea agreements.

Fed. R. Crim. P. 11(c) provides, in part:

> **(3) Judicial Consideration of a Plea Agreement**.
>
> (A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) [government agreement to dismiss charges] or (C) [government agreement that a specific sentence, sentence range, or sentencing factor applies], the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

Rule 11(c) also provides:

> **(5) Rejecting a Plea Agreement**. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
>
> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

This case involves a plea agreement containing a promise that the government will dismiss other charges as provided by Rule 11 (c)(1)(A).

"The district court has broad discretion to accept or reject plea agreements." United States v. Petty, 600 F.2d 713, 714 n. 2 (8th Cir. 1979). *See also* United States v. Petty, 600 F.2d 713, 714 (8th Cir. 1979) and In re Yielding, 599 F.2d 251, 253 (8th Cir. 1979). The Advisory Committee Notes to the 1974 amendments to Rule 11 provides, in part, a discussion of the district court's authority under Rule 11:

The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged.

> Administratively, the criminal justice system has come to depend upon pleas of guilty and, hence, upon plea discussions. . . . But expediency is not the basis for recognizing the propriety of a plea agreement practice. Properly implemented, a plea agreement procedure is consistent with both effective and just administration of the criminal law. . . .
>
> Where the defendant by his plea aids in insuring prompt and certain application of correctional measures, the proper ends of the criminal justice system are furthered because swift and certain punishment serves the ends of both general deterrence and the rehabilitation of the individual defendant. . . . A plea of guilty avoids the necessity of a public trial and may protect the innocent victim of a crime against the trauma of direct and cross-examination. Finally, a plea agreement may also contribute to the successful prosecution of other more serious offenders. . . .
>
> Upon notice of the plea agreement, the court is given the option to accept or reject the agreement or defer its decision until receipt of the presentence report.
>
> The judge may, and often should, defer his decision until he examines the presentence report. This is made possible by rule 32 which allows a judge, with the defendant's consent, to inspect a presentence report to determine whether a plea agreement should be accepted. . . .
>
> The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual trial judge. . . .
>
> If the court rejects the plea agreement and affords the defendant the opportunity to withdraw the plea, the court is not precluded from accepting a guilty plea from the same defendant at a later time, when such plea conforms to the requirements of rule 11.

U.S. District Judge Joseph R. Goodwin of the Southern District of West Virginia wrote a lengthy opinion discussing his decision to reject a plea agreement in United States v. Walker, 423 F.Supp.3d 281 (S.D. W.Va. 2017). Judge Goodwin ruled that "courts should reject a plea agreement upon finding that the plea agreement is not in the public interest. There is no justice in bargaining against the people's interest." United States v. Walker, 423 F.Supp.3d at 296.

> Several circuit courts have approved consideration of the public interest in accepting or rejecting a plea agreement. The Ninth Circuit has stated, "a district court properly exercises its discretion when it rejects a plea agreement calling for a sentence the court believes is too lenient or otherwise not in the public interest in light of the factual circumstances specific to the case." In re Morgan, 506 F.3d 705, 712 (9th Cir. 2007) (internal quotations omitted). The Tenth Circuit has stated, "[w]hile '[t]he procedures of Rule 11 are largely for the protection of criminal defendants . . . Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that bargain is too lenient, or otherwise not in the public interest.'" United States v. Carrigan, 778 F.2d 1454, 1462 (10th Cir. 1985) (*quoting* United States v. Miller, 722 F.2d 562, 563 (9th Cir. 1983)). The Fifth Circuit has commented, "[i]f the court did not have discretion to refuse a plea bargain because the agreement is against the public interest in giving the defendant unduly favorable terms, [Rule 11(e)(2) allowing deferral of acceptance to sentencing] would be largely unnecessary." United States v. Bean, 564 F.2d 700, 704 (5th Cir. 1977). The First Circuit has stated as a reason why the court must have discretion whether or not to accept a plea "that a conviction affects more than the court and the defendant; the public is involved." United States v. Bednarski, 445 F.2d 364, 366 (1st Cir. 1971).

Id. at n. 105.

One of the factors Judge Goodwin considered was:

> [T]the court should examine the plea agreement and, in light of the presentence report, determine whether the apparent motivation is to advance justice or, more probably, to expediently avoid trial. Here, the agreement trades a grand jury indictment charging three counts of distributing heroin, two counts of distributing fentanyl, and one count of being a felon in possession of a firearm for an information charging one count of distributing heroin. The principal motivation appears to be convenience.

United States v. Walker, 423 F. Supp. 3d at 297.

Judge Goodwin rejected the plea agreement. Defendant pleaded guilty to distributing heroin and fentanyl without a plea agreement and, following a jury trial on the remaining charges, he was convicted of being a felon in possession of a firearm. Walker appealed his convictions and sentence and the district court's rejection of the plea agreement. The United States Court of Appeals for the Fourth Circuit affirmed. United States v. Walker, 922 F.3d 239, 243 (4th Cir. 2019). The Fourth Circuit noted that the district court had adhered to the Rule 11 procedural steps that govern plea agreements. Id. at 248.

> [T]he court properly accepted Walker's plea of guilty, deferred its acceptance of the plea agreement until it had reviewed the PSR, and — after rejecting the plea agreement — permitted Walker to withdraw his guilty plea. What Walker contests on appeal are the court's reasons for rejecting the plea agreement.

United States v. Walker, 922 F.3d at 248. The Fourth Circuit observed that "Rule 11 does not establish criteria to guide a district court's discretion with respect to accepting or rejecting a plea agreement." Id. at 249. "Acknowledging that a trial court does not possess unbounded discretion to reject a plea agreement, we will discuss factors that guide an exercise of that discretion. We will then apply those factors to the rejection of Walker's plea agreement." Id.

> Several factors are available that assist a district court's discretion in deciding whether to reject a plea agreement. Importantly, the principles that generally inhere in discretionary rulings apply to the rejection of a plea agreement. That is, a district court is not entitled to base its decision on arbitrary or irrational factors. To ensure the existence of sound reasons for rejection of a plea agreement, and to facilitate appellate review, the rejection and its justification should be on the record. Moreover, the bases for a court's rejection of a plea agreement must pertain to the specific agreement at hand, and the court should not rely on extraneous considerations or broad categorical determinations. Indeed, failure to consider the specific agreement would constitute an abdication — and hence an abuse — of discretion. Additionally, requiring a court to focus its analysis on the relevant plea agreement minimizes the possibility that the court could interfere with plea negotiations, in contravention of Rule 11(c)(1).
>
> A district court may always consider whether a plea agreement is "too lenient," in light of the defendant's criminal history or the relevant offenses. Conversely, a court can reject a plea agreement that it sees as too harsh. Some courts have framed the inquiry as suggested by the Guidelines, which encourage the

> acceptance of a plea agreement if its provisions "adequately reflect the seriousness of the actual offense behavior and . . . accepting the agreement will not undermine the statutory purposes of sentencing." Thus, a court should carefully weigh whether the plea agreement adequately reflects the defendant's misconduct and serves the objectives of sentencing.
>
> Importantly, a district court should also weigh whether the plea agreement is in the public interest. And the public interest assessment should be predicated on the circumstances of the case. Of additional importance, a court should always consider any danger the defendant might pose to the public.
>
> The foregoing is not an exhaustive review of the factors that guide a district court's assessment of a plea agreement. At bottom, the court should articulate a rational justification for its decision after weighing all the relevant circumstances. And, in so doing, the court must accord due respect to the prosecutorial prerogatives involved in charging decisions, thus ensuring that the separation of executive and judicial powers is not infringed.

United States v. Walker, 922 F.3d at 249–50.

The Fourth Circuit held that Judge Goodwin did not err in rejecting the plea agreement. Walker petitioned for certiorari, which was granted. The United States Supreme Court reversed the firearms conviction and remanded to the Fourth Circuit for further consideration in light of Rehaif v. United States, 588 U.S. ––, 139 S.Ct. 2191, 204 L.Ed.2d 594 (2019) (requiring proof that defendant knew that he had the relevant status when he possessed the firearms). Walker v. United States, 140 S. Ct. 474, 205 L. Ed. 2d 266 (2019).

The final presentence report calculated defendant Bernard's total offense level to be 34. With a criminal history category of VI, the advisory guideline range is 262 – 327 months. The statutory maximum penalty for robbery is 180 months. The highest offense level encompassing that limit, for a defendant in criminal history category VI, is level 29. Thus, under the plea agreement, defendant will not serve time for much of the relevant conduct involved in the offense.

Defendant Bernard and the others planned to rob the victim of drugs and money. The victim was not in possession of either. The defendant agreed that, as part of the robbery, the victim was assaulted and sustained life-threatening bodily injury. Defendants nearly killed the victim and left him for dead, unconscious, in a remote area,

6

without his clothes, in November in South Dakota. Defendant Bernard, apparently realizing what they had done, suggested going back to kill the victim. The victim spent six months in a hospital. He had to learn how to walk and talk. He has permanent scars and lacks a complete skull. He has no memory from before the robbery and assault, having lost all his childhood and early adulthood memories. A six level enhancement for the degree of injury is not sufficient. However, the plea agreement forecloses any upward departure or variance to take into account these serious facts.

One of the co-defendants used a tree branch and a knife to assault the victim. As set forth above, the injuries sustained as a result of the use of dangerous weapons are severe and permanent. Defendant objected to a four-level enhancement for the use of the dangerous weapons because her co-defendant wielded those weapons. Defendant was herself engaging in the assault along with the co-defendant.

Defendant was initially in possession of the victim's car keys under the ruse of driving to a residence in Watertown, South Dakota. She retained control of the victim's keys, and also took control of his cell phone. She drove the victim in the victim's car to another residence and asked someone to beat up the victim and take his money. When that request failed, she contacted the co-defendants and suggested they beat up the victim and steal drugs and money from the victim's car. In order to do so without being seen, they decided defendant Bernard should drive the victim to a remote area far from Watertown, South Dakota. Bernard did so. The victim, who did not speak English, did not know that defendant Bernard was openly talking on her phone with the other defendants about taking him to a remote location to assault and rob him. He was inveigled into staying in his vehicle. Defendant objects to a four-level enhancement for abduction but what occurred clearly constitutes unlawfully moving the victim to another location to commit the offenses.

The victim did not speak or understand English at all. Bernard knew that and reported it to the co-defendants as an enticement to get them to assault and rob the victim. Bernard also told the co-defendants that the victim was small in size compared to them and would be easy to assault. Defendant objected to a two-level enhancement for

vulnerable victim. The victim was clearly unusually vulnerable due to his inability to speak English and realize that he was in grave danger.

At defendant Bernard's insistence, the four defendants planned in advance to rob and assault the victim. They planned that defendant Bernard would drive the victim to a remote area where he could not escape and could not summon help. This victim was more than vulnerable; he was in the most vulnerable position. He could not understand that the defendants were planning to assault and rob him. He could not communicate to anyone that he felt that he was in danger. Defendant Bernard specifically targeted the victim because of his vulnerability. Five of the ten points for relevant conduct will have no effect on the defendant's sentence due to the statutory maximum penalty. Defendant Bernard will escape punishment for much of her relevant conduct because she entered into a plea agreement that caps her sentence at 180 months imprisonment. She was charged with five serious crimes. The victim is permanently and very seriously damaged by the assault. Yet the defendant pleaded guilty to one crime, depriving this Court of the possibility of imposing just punishment by running sentences for multiple offenses consecutive or partially consecutive.

Absent evidence of some public interest in allowing defendant to plead to one count with a statutory maximum penalty of 180 months imprisonment, this Court is free to reject the plea agreement. Allowing Bernard to plead guilty to one crime which limits her sentence to a below guidelines sentence results in a sentence which is too lenient under the circumstances. Such a sentence does not adequately reflect the seriousness of the crimes committed against this victim. Such a sentence also does not adequately protect the public from the defendant.

The plea agreement is not in the public interest. At an evidentiary hearing held on August 16, 2021, the Court notified defendant Bernard that it was rejecting the plea agreement. She was advised that she may withdraw her plea of guilty to robbery. Counsel for defendant requested time to consider whether defendant wanted to withdraw her guilty plea and proceed to trial on all counts. Defendant has not notified the Court as to defendant's intention. Counsel for defendant has filed under seal his affidavit, Doc.

146, to apparently ask the Court to reconsider. I decline to do so. The FBI 302 supports the fact that Bernard was, for the third time, lying about her involvement in the planning of these crimes, the two abductions committed by Bernard and her participation in the assaults on the victim.

The Speedy Trial Act, 18 U.S.C. § 3161, requires that trial be held within 70 days of, inter alia, the date defendant entered an initial appearance. Defendant entered her initial appearance on October 15, 2020. Trial was set for December 22, 2020. A superseding indictment was filed on November 10, 2020, adding an additional defendant. The indictment did not in any manner change the charges pending against defendant Bernard and did not have any effect on defendant Bernard's speedy trial time. On November 20, 2020, defendant filed a motion for a continuance of the trial. Thirty-six days had elapsed from defendant's speedy trial clock. Trial was continued to May 18, 2021. All time that elapsed from and after November 20, 2020, is excludable from the speedy trial clock. 18 U.S.C. § 3161(h)(7)(A). Prior to the trial date, on April 6, 2021, defendant filed a plea agreement. The Court rejected the plea agreement on August 16, 2021, after considering the plea agreement and the presentence investigation report. All time between April 6, 2021, and August 16, 2021, including the time it took to prepare the presentence investigation report, is excludable from the speedy trial clock. 18 U.S.C. § 3161(h)(1)(G). I find that it is in the interests of justice to allow defendant fifteen days within which to consider whether to withdraw her plea. Thus, the fifteen days that have elapsed since I rejected the plea agreement are excludable from the speedy trial time. 18 U.S.C. § 3161(h)(7)(A). It is necessary to set this matter for trial. Accordingly,

IT IS ORDERED:

1. Defendant Tiffany Bernard's plea agreement is rejected.

2. This matter shall come on for trial on Counts 1, 2, 4, and 5, on Tuesday, September 14, 2021, at 10:30 o'clock a.m. in the Federal Courtroom of the U.S. Courthouse, 102 Fourth Avenue SE, Aberdeen, South Dakota.

DATED this 2nd day of September, 2021.

BY THE COURT:

*[signature]*

CHARLES B. KORNMANN
United States District Judge