UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIFFANY BERNARD,<br><br>Defendant. | 1:20-CR-10041-02-CBK<br><br>MEMORANDUM OPINION<br>AND ORDER |

The parties entered into a plea agreement providing for the defendant to plead guilty to robbery, a federal crime with a 180-months maximum sentence. The government agreed to dismiss a charge of kidnaping (there were actually two kidnap offenses, one from Watertown, South Dakota, to Agency Village, near Sisseton, South Dakota, and from Agency Village to Drywood Lake where the victim was beaten within an inch of his life), a charge of assault with an intent to commit murder and aiding and abetting, a charge of maiming and aiding and abetting (one of the defendants having carved with a knife "MC" into the victim's chest, meaning "mop city" or beating the victim to "mop" him up), assault resulting in serious bodily and aiding and abetting, and a charge of assault with a dangerous weapon and aiding and abetting.

After an evidentiary hearing at which all four defendants and the victim and his spouse were present, I ruled that I would not accept the plea agreement as to this defendant. I entered an Order (Doc. 148) explaining my rationale for rejecting the plea agreement. I accepted the plea agreements as to the other three defendants, accepting the plea agreement as to defendant Rodlund only because I was left with the option to run his 180-month sentence consecutively to his sentence of aggravated sexual abuse, a sentence he has been serving. I have sentenced Mr. Rodlund to 180 months, to run consecutively.

As to Ms. Bernard, the guideline range under only the robbery charge is 262-327 months. She has 15 criminal points, two more than required for a criminal history

category of VI. Nine of those points arise out of conduct that took place after the count of conviction here.

I offered the opportunity to Ms. Bernard to withdraw her plea of guilty to the robbery charge and she has declined to do so. Following a motion for continuance from Ms. Bernard, the trial of all charges is now set for Monday, October 25, 2021.

The victim here does not speak a word of English. He is from Mexico and is of slight build. Ms. Bernard kept his car keys and cell phone and planned the two kidnapings to be followed by a robbery and very violent and mean-spirited assaults. Following the assault by four people, they left the defendant at a remote location in November. No one tried to help him or seek help. He was found by a fisherman the next day, dressed only in his underwear. That would be an indication of hypothermia as victims of hypothermia think they are very hot and remove clothing, even in the face of very cold weather. He was unconscious. He spent six months in the hospital. He had to learn to walk, eat, and talk again. He has no memory of his childhood or basically anything prior to the assault. He is no longer employable and had been a full-time employee before these crimes. He has never used or possessed any controlled substances although Ms. Bernard convinced the three male defendants that he had drugs and money which could be obtained from him by force. She emphasized to them that he was of slight stature and could not speak or understand English. She tried to enlist her cousin to beat up the victim before encountering the other defendants. Her cousin refused to become involved.

Defendant repeatedly lied to investigating officers until finally confessing while minimizing her criminal activities and the fact that she was the "ring-leader." She is by far the most culpable of the four defendants. She has been and is a very dangerous person. She was on house arrest at the time these crimes were committed.

The government has now filed a motion (Doc. 170) to dismiss Counts 1, 2, 4, and 5 of the Superseding Indictment. The defendant has also filed a consent to the dismissals (Doc. 171). The motion should be denied.

## DECISION

Ordinarily, the decision as to what charges to file or bring before a grand jury rests entirely in the prosecutor's discretion. United States v. Armstrong, 517 U.S. 456, 464, 116 S. Ct. 1480, 1486, 134 L. Ed. 2d 687 (1996). The Federal Rules of Criminal Procedure provide, in relevant party, that the "government may, *with leave of court*, dismiss an indictment, information, or complaint." Fed. R. Civ. P. 48(a) (emphasis supplied). The United States Supreme Court has instructed:

> The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e. g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection. But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest. It is unnecessary to decide whether the court has discretion under these circumstances, since, even assuming it does, the result in this case remains the same.

Rinaldi v. United States, 434 U.S. 22, 30 n. 15, 98 S. Ct. 81, 86 n. 13, 54 L. Ed. 2d 207 (1977) (internal citations omitted). The Eighth Circuit, citing Rinaldi, has held that there are "two circumstances in which the district court may deny leave to dismiss an indictment: when the defendant objects to the dismissal, and when dismissal is clearly contrary to the manifest public interest." United States v. Jacobo-Zavala, 241 F.3d 1009, 1012 (8th Cir. 2001). The Eighth Circuit's explanation of the limits of the district courts' power to deny dismissal in the public interest is instructive:

> A district court's discretion to deny leave is sharply limited by the separation of powers balance inherent in Rule 48(a) itself, because a district court that denies leave to dismiss an indictment is essentially exercising judicial review of the prosecutor's exercise of executive authority. Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.
>
> As the Ninth Circuit recently observed, the question presented by a challenge to a district court's denial of leave to dismiss an indictment to which the defendant does not object is whether, consistent with the separation of powers, the judiciary

> may encroach upon the right of the executive to make basic decisions as to who may be criminally charged, and with what they may be charged. Although the district court may take into account the public interest concerns created by dismissal of an indictment, it may not substitute its judgment for that of the prosecutor.
>
> The executive branch retains broad discretion to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take care that the Laws be faithfully executed. As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.
>
> The decision to dismiss an indictment implicates concerns that the Executive is uniquely suited to evaluate. Because it is the prosecutor, and not the district court, who is primarily responsible for balancing public and individual interests in determining who should be prosecuted, a district court should be reluctant to deny her request. The court is limited to assessing whether the government's motion is contrary to manifest public interest because it is not based in the prosecutor's good faith discharge of her duties.

United States v. Jacobo-Zavala, 241 F.3d 1009, 1012–13 (8th Cir. 2001) (internal citations and quotations omitted).

The Eighth Circuit went on the cite its opinion in United States v. Dupris, 664 F.2d 169, 174 (8th Cir.1981), as follows.

> In this case, the court did not act to protect the government against prosecutorial harassment. Nor was the Government's motion prompted by considerations clearly contrary to the public interest. The Government provided the court with an adequate and proper reason for dismissal: that the evidence needed for conviction had been lost or misplaced and the memories of key witnesses had faded. The court made no finding of bad faith on the part of the government. The reason proffered at least supports a dismissal under Rule 48(a), if indeed it does not require it.

United States v. Jacobo-Zavala, 241 F.3d at 1014, (quoting United States v. Dupris, 664 F.2d at 174–75). Importantly, the Eighth Circuit in Jacobo-Zavala made clear that a determination that the penalty faced by the defendant is inadequate does not justify refusal to dismiss an indictment.

> It is clear from the reasons it expressed that the district court denied leave of court because it disagreed with the prosecutor's assessment of what penalty the defendants ought to face. The decision not to prosecute, however, is central to the executive power granted to United States Attorneys. There is no suggestion that the government acted in bad faith or had improper motives in attempting to dismiss the charges, and strategic decisions such as whether defendants ought to be tried in a federal forum are at the heart of the function of prosecution vested in the Executive Branch. Accordingly, we conclude that the district court overstepped its authority and abused its discretion when it withheld leave of court to file a dismissal of the indictment.

United States v. Jacobo-Zavala, 241 F.3d at 1014.

The United States Court of Appeals for the Fifth Circuit has held that denial of a motion to dismiss an indictment is proper if dismissal is contrary to the public interest. United States v. Welborn, 849 F.2d 980, 983 (5th Cir. 1988). "A prosecutor's request for dismissal is improper when it is made in bad faith." Id. Bad faith arises, inter alia, "when the prosecution is motivated by considerations clearly contrary to the public interest ." Id. (internal citations omitted). "When a court considers a prosecutor's motion to dismiss it must begin with the presumption that the prosecutor acted in good faith. This presumption is rooted in a proper respect for the constitutional division of power between the executive and judicial branches of government. United States v. Welborn, 849 F.2d at 983. "Based on the prosecutor's statement of reasons and any response by defendant, the court should determine whether the presumption of good faith is overcome by 'an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest.'" United States v. Welborn, 849 at 983–84.

The victim in this case was in the hospital in Fargo, North Dakota, six months as a result of his injuries. He was not able to walk or talk for many months. He has no memory from anything before he was released from the hospital. Additionally, he now suffers from short-term memory loss. The victim now has vision problems and cannot hear out of his left ear. He suffers from nightmares and headaches. He has not been working for four years since his release from the hospital. An area of the victim's brain is exposed and that dissuades employers from hiring him. His condition is such that if he worked and got hit (from an animal, for example), his condition would worsen. A doctor

in Fargo told his family that he could not work. He is unable to support his family. He cannot obtain medical insurance to address his disabilities. The victim received a life sentence of physical disability. The crimes committed against him have resulted in a financial disaster to the victim and it appears that that situation will continue for the rest of his life.

Neither the victim nor his wife were consulted by the prosecutor before the government entered into the plea agreement with the defendant and her co-defendants. The victim told this Court that he would like the defendant to pay him for life and to be jailed for 30 years for what she and her co-defendants did to him. The victim stated that if the defendant could not pay for his injuries, she should be in jail for life.

The prosecutor stated that getting a conviction on all the charges would be a steep hill to climb. The victim could not identify anyone but defendant Bernard. That is ludicrous. Two of the co-defendants entered into a cooperation agreement wherein they agreed to testify at trial concerning, *inter alia*, this defendant's conduct.

The prosecutor stated that, when he considered whether to offer a plea to the crime of robbery, he considered that, with a probable total offense level of 34 and a criminal history category of I, the guideline range would be 151-188 months, which would allow for a 15-year sentence. However, this defendant has a criminal history category of VI. Her guideline range is 262 – 327 months. Defendant's conviction for robbery alone strips the Court of any ability to sentence the defendant to a just punishment for her offense.

I do not proceed lightly in this action. I am fully aware of United States v. Jacobo-Zavala, *supra*, a case not cited by the parties here. I find that the government's motion to dismiss the other four counts of the indictment under all the facts of this case is motivated by considerations contrary to the public interest and dismissal would be clearly contrary to the manifest public interest.

I recognize that a denial of such motion must be the rarest of cases. This is the rarest of cases. I recognize that I may not substitute the judgment of the court for that of the prosecutor. I have never done this previously (what I am doing in this case) during

6

the 26 years I have spent as an Article III judge. I really do not know why this plea agreement was reached. The other defendants are clearly available to testify against Ms. Bernard. Her guilt and terrible conduct was known long before now. A Superseding Indictment was filed, adding an additional defendant. This indicates the prosecutor knew as well how terrible the facts are here. Ms. Bernard filed numerous objections to her presentence investigation report, most of which were frivolous.

I agree with what Judge Beam said in his dissent in the Jacobo-Zavala case: "As noted in Mistretta v. United States, sentencing in a criminal case is 'primarily a judicial function.'" 488 U.S. 361, 390, 109 S. Ct. 647, 102 L.Ed.2nd 714 (1989).

It may well be that I cannot prevent the government from dismissing the four charges but I decline to be a party to any such thing, unless, of course, I am told by a higher court to do so. That remains to be seen.

In my earlier scheduling Order, I included language that no further continuances would be granted. In light of this present Order, a continuance may be necessary if the government or the defendant or both wish to have the Court of Appeals look at this matter to see whether I am in error.

Now, therefore,

IT IS ORDERED that the motion, Doc. 170, to dismiss counts 1, 2, 4, and 5 of the indictment is denied.

DATED this 15th day of October, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge